**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALEXANDER FABRICS, LLLP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:07-cv-00174 GMS |
| | : | |
| ROKA APPAREL PRODUCTS, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT ROKA APPAREL PRODUCTS, LLC'S RESPONSE TO**
**PLAINTIFF ALEXANDER FABRICS, LLLP'S MOTION TO ENJOIN ROKA**
**APPAREL PRODUCTS, LLC FROM PROCEEDING IN THE FLORIDA ACTION**

Defendant RoKa Apparel Products, LLC ("RoKa"), by and through its undersigned counsel, hereby requests that this Honorable Court deny the Motion to Enjoin RoKa from Proceeding in the Florida Action (the "Motion to Enjoin") filed by Plaintiff Alexander Fabrics, LLLP ("Alexander") and, in support thereof, RoKa states as follows:

**I.    FACTS & PROCEDURAL HISTORY**

On March 26, 2007, Alexander initiated this collection action by filing a Complaint with this Court. The goods for which Alexander seeks to collect were manufactured by Alexander in North Carolina, shipped to RoKa "FOB Jacksonville, Florida," delivered to RoKa in "Jacksonville, Florida," and paid for from RoKa's Jacksonville, Florida office through its account at a Florida bank. See the Declaration of Larry L. Stone at ¶¶ 5-8 and the attachments thereto, a copy of which is attached hereto as Exhibit A. In its Complaint, Alexander relied on diversity jurisdiction under 28 U.S.C. § 1332 as the sole basis for this Court's purported subject matter jurisdiction, alleging that Alexander is a North Carolina limited liability partnership with

a principal place of business in North Carolina, and that RoKa is a Delaware limited liability company with a principal place of business in Florida. See the Complaint at ¶¶ 2-3.

On or about April 30, 2007, RoKa commenced a related action against Alexander in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida in a case captioned Roka Apparel Products, LLC v. Alexander Fabrics, LLLP, Case No. 16-2007 CA 000151 (the "Florida Action"). Shortly thereafter, on or about May 2, 2007, RoKa filed a Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter or, In the Alternative, to Stay in the instant case in which RoKa argued that the instant case should be dismissed because Alexander did not meet its threshold burden of alleging the citizenship of its partners or of RoKa's individual members, thereby preventing this Court from exercising diversity jurisdiction. RoKa also argued that the instant action should be stayed in favor of the Florida Action because most of the subject transactions took place in Florida and the only tenuous link Delaware has to this controversy is that RoKa was formed there.

On June 1, 2007, Alexander filed with this Court a First Amended Complaint, the Motion to Enjoin, and its Answering Brief in Opposition to RoKa's Motion to Dismiss or, in the Alternative, to Stay (the "Answering Brief"). In its Motion to Enjoin and Answering Brief, Alexander contended that this Court should enjoin RoKa from proceeding in the Florida Action under the "first filed" rule because the Florida Action, which allegedly involves the same parties and issues as the instant action, was filed after the instant action. See the Answering Brief at 5-6.

## II.    ARGUMENT

### 1.    The Requested Injunction Should Not Be Granted Because the "First Filed" Rule Does Not Apply in the Instant Case

The "first filed" rule holds that, under certain circumstances, courts may enjoin the subsequent prosecution of proceedings before another court that involve the same parties and the

same issues. <u>E.E.O.C. v. Univ. of Pennsylvania</u>, 850 F.2d 969, 971 (3d Cir. 1988).  However, the "first filed" rule does **not** apply unless **both** proceedings were brought in **federal** court.  <u>See</u> <u>Omnicom Group, Inc. v. Employers Reinsurance Corp.</u>, 2002 WL 109346, at *2 (D. Del. Jan. 28, 2002) ("As [the 'first filed'] rule only applies to related cases filed in different federal courts, it is not applicable to the present situation where one action is pending in state court.") **(Sleet, J.)**; <u>see</u> <u>also</u> <u>N. American Communications, Inc. v. Homeowners Loan Corp.</u>, 2007 WL 184776, at *3, n.1 (W.D. Pa. Jan. 22, 2007) (finding that "first filed" rule cannot be invoked where one suit is brought in federal court and other related suit is brought in state court).[1]

Moreover, the very authorities cited by Alexander in its Answering Brief recognize that the "first filed" rule applies only when both proceedings are pending in federal court.  In the Third Circuit's seminal case addressing the "first filed" rule, the Court of Appeals in <u>E.E.O.C. v.</u> <u>Univ. of Pennsylvania</u> (cited by Alexander at p. 6 of its Answering Brief) stated, "[the 'first filed' rule] gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues *already before another district court.*"  850 F.2d at 971 (emphasis added).  In <u>APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.</u> (cited by Alexander at p. 6 of its Answering Brief), the United States District Court for the District of Delaware found as follows:  "[t]he first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation of the same issues between the same parties *in more than one federal court.*"  295 F. Supp.2d 393, 396 (D. Del. 2002) (emphasis added).

In addition, the "first filed" rule is not applicable here because the issues in the two actions are not the same.  This action involves a claim by Alexander for payment of thirty-one

---

[1]      Copies of the opinions in <u>Omnicom</u> and <u>N. American Communications</u> are attached hereto as Exhibits B and C, respectively.

(31) invoices issued between December 22, 2004 and March 8, 2005 in the total amount of $152,238.55. See the Complaint at ¶ 19. The Florida Action is a claim by RoKa for damages against Alexander in excess $700,000 related to the failure of a large quantity of specialized liner fabric manufactured by Alexander in 2004 to conform to specifications, samples, and affirmations. See Ex. A at ¶¶ 9-10. As alleged in the Florida Action, the liner fabric delivered by Alexander to RoKa in Florida was not fit for the purpose for which it was to be used, failed to conform to specifications, did not stretch or mold as required, and was not the same as that which Alexander had promised and submitted for testing and approval. Id. Importantly, while the issues asserted by Alexander in this case and by RoKa in the Florida Action are not identical, there is no known impediment to Alexander asserting its claims as counterclaims in the Florida Action.

Because the Florida Action is pending before a state court (i.e., the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida), and the issues in the two actions are not identical, the "first filed" rule provides no basis for this Court to enjoin RoKa's prosecution of the Florida Action. Thus, Alexander's Motion to Enjoin should be denied.

**2.    The Anti-Injunction Act Prohibits this Court from Granting the Requested Injunction**

The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The United States Supreme Court has "expressly rejected the view that the anti-injunction statute merely states a flexible doctrine of comity, and [has] made clear that the statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions...." Mitchum v. Foster, 407 U.S.

225, 228-29 (1972) (citing <u>Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 286-87 (1970)).  The Anti-Injunction Act cannot be circumvented by framing the injunction sought as a restraint on a party rather than on the state court or its officers.  <u>In re</u> <u>Glenn W. Turner Enterprises Litigation</u>, 521 F.2d 775, 779 (3d Cir. 1975); <u>see also</u> 17A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 4222 (3d ed. 2006).

The Ant-Injunction Act prohibits a federal court from enjoining state court proceedings only when the state court proceedings are in progress – <i>i.e.</i>, a federal court may restrain a party from instituting, but not from continuing with, state court proceedings.  <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 484, n.2 (1965).  State court proceedings are in progress for purposes of the Anti-Injunction Act when the state court action was commenced prior to the date on which injunctive relief was requested in federal court.  <u>See</u> <u>National City Lines, Inc. v. LLC Corp.</u>, 687 F.2d 1122, 1127 (8th Cir. 1982); <u>Barancik v. Investors Funding Corp. of N.Y.</u>, 489 F.2d 933, 937 (7th Cir. 1973); <u>see also</u> 17A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 4222 (3d ed. 2006); 19 FEDERAL PROCEDURE, LAWYERS EDITION § 47:104 (2006); <u>but see</u> <u>Roth</u> <u>v. Bank of the Commonwealth</u>, 583 F.2d 527, 528 (6th Cir. 1978) (finding that Anti-Injunction Act prohibits federal courts from issuing injunctions against state court proceedings commenced after institution of federal action but before issuance of injunction by federal court).

There are only three (3) limited exceptions to the rule that a federal court may not enjoin pending state court proceedings:  (i) when the federal court is expressly authorized to do so by an Act of Congress; (ii) when an injunction is necessary in aid of the federal court's jurisdiction; and (iii) to protect or effectuate the federal court's judgments.

The first exception is satisfied when "an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the

stay of a state court proceeding." <u>Mitchum</u>, 407 U.S. at 237-38.[2]  The second exception to the Anti-Injunction Act (the "necessary in aid of jurisdiction" exception) permits federal courts to stay later-initiated state court proceedings over the same res in actions *in rem* because exercise of the state court's jurisdiction over the same res necessarily would impair the federal court's pre-existing jurisdiction. <u>Kline v. Burke Constr. Co.</u>, 260 U.S. 226, 229 (1922).  That exception does not permit injunctions merely to prevent duplicative actions *in personam* unless the federal court is entertaining complex litigation involving a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts.  <u>See id.</u>; <u>Carlough v. Amchem Prods., Inc.</u>, 10 F.3d 189, 202-04 (3d Cir. 1993).  The third exception to the Anti-Injunction Act (a.k.a., the "relitigation exception"), which allows a federal court to enjoin stay court proceedings to "protect or effectuate its judgments," is "founded in the well-recognized concepts of *res judicata* and collateral estoppel." <u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 147 (1988).  That exception is intended to allow a federal court to prevent state litigation of an issue that previously was presented to, and decided by, that federal court.  <u>Id.</u>

Because the Florida Action was commenced by RoKa (on or about April 30, 2007) over a month **before** Alexander filed its Motion to Enjoin (on or about June 1, 2007) requesting that this Court issue an injunction staying the Florida Action, the Anti-Injunction Act prevents this Court from granting said injunction unless one of the Act's three (3) exceptions is met.  Because there is no federal statute that expressly authorizes the Court to enjoin the Florida Action in the context of this dispute, the instant lawsuit and the Florida Action do not involve a common res or

---

[2]     Examples of such Acts of Congress include the Employee Retirement Income Security Act (Pub. L. No. 93-406, 88 Stat. 829 (1974)), <u>General Motors Corp. v. Buha</u>, 623 F.2d 455 (6th Cir. 1980), the Private Securities Litigation Reform Act (Pub. L. No. 104-67, 109 Stat. 737 (1995)), <u>BankAmerica Corp. Securities Lit.</u>, 263 F.3d 795 (8th Cir. 2001), the Indian Gaming Regulatory Act (25 U.S.C. § 2701 *et seq.*), <u>Sycuan Band of Mission Indians v. Roache</u>, 788 F. Supp. 1498, <u>aff'd</u> 38 F.3d 402 (9th Cir. 1992), and the Agricultural Credit Act (12 U.S.C. § 2202 *et seq.*), <u>Zajac v. Federal Land Bank of St. Paul</u>, 887 F.2d 844 (8th Cir. 1989).

a complex, multi-party litigation, and this Court has not rendered a judgment or decision of any kind in connection with this dispute, none of the exceptions to the Anti-Injunction Act applies here. Therefore, the Anti-Injunction Act prevents the Court from, enjoining RoKa's prosecution of the Florida Action, and this Court should deny Alexander's Motion to Enjoin.

### 3. The Facts Underlying the Parties' Dispute Warrant This Court's Denial of Alexander's Motion to Enjoin and a Stay of the Instant Lawsuit

Regardless of the prohibition imposed by the Anti-Injunction Act on this Court's ability to grant the injunctive relief requested by Alexander, the facts that led up to the parties' dispute justify this Court's denial of Alexander's Motion to Enjoin and a stay of the instant lawsuit in favor of the Florida Action. RoKa will not belabor the point by repeating all of the relevant facts set forth in its Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter or, In the Alternative, to Stay. However, RoKa is compelled to clarify a few misstatements made in the Declaration of Christopher Perry, which Alexander offered in support of the Answering Brief.

First, Mr. Perry stated in ¶ 2 of his Declaration that "Alexander had no dealings or business in the State of Florida." That statement is belied by the invoices attached by Alexander to its Complaint as Exhibit A (as well as other documents generated by Alexander, such as packing slips), which expressly state that Alexander routinely sold and shipped the subject goods to RoKa or RoKa's agent at Jacksonville, Florida addresses. See Dec. of L. Stone, attached hereto as Ex. A, at ¶¶ 5-6. Moreover, Alexander routinely received and accepted payments from RoKa in the form of checks that were sent by RoKa from its Jacksonville, Florida office and drawn from a Florida bank. Id. at ¶ 7. Thus, it is clear that Alexander knowingly dealt with Florida residents and conducted business in Florida.

In addition, Mr. Perry states in ¶ 3 of his Declaration that "title to the fabric subject of the present dispute was transferred to Roka in the State of North Carolina upon delivery by

Alexander to a delivery company in the State of North Carolina." However, RoKa's purchase orders and Alexander's invoices expressly provide that the subject goods were shipped to RoKa "FOB JACKSONVILLE, FL U.S." – *i.e.*, Jacksonville, Florida was the place of destination for those orders. See Ex. A at ¶ 8. Therefore, even assuming *arguendo* that the goods shipped by Alexander conformed to the purchase orders, title to those goods was transferred to RoKa in Jacksonville, Florida (and not North Carolina) because delivery of the goods was tendered in Jacksonville, Florida. Id.; see also 6 Del.C. § 2-509(1)(b) ("Where the contract requires or authorizes the seller to ship goods by carrier... if it [requires] him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.").

In sum, the facts underlying the parties' dispute (as set forth above and in RoKa's Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter or, In the Alternative, to Stay) warrant this Court's denial of Alexander's Motion to Enjoin and a stay of the instant lawsuit in favor of the Florida Action.

## III.    CONCLUSION

For the foregoing reasons, RoKa respectfully requests that the Court deny Alexander's Motion to Enjoin RoKa from Proceeding in the Florida Action in its entirety.

Respectfully submitted,

Dated:  June 15, 2007

By: _____
John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 N. Broom Street
Wilmington, Delaware 19806
Tel. No. (302) 655-4200

Of counsel:
Barbara Slott Pegg
Attorney at Law
316 Sea Moss Lane
Ponte Vedra Beach, Florida 32082
Tel. No. (904) 285-8100

Attorneys for Defendant,
RoKa Apparel Products, LLC

## CERTIFICATE OF SERVICE

I, John C. Phillips, Jr., hereby certify that, on June /5th, 2007, the foregoing Defendant

RoKa Apparel Products, LLC's Response to Alexander Fabrics, LLLP's Motion to Enjoin RoKa

Apparel Products, LLC from Proceeding in the Florida Action was hand delivered to the

following person and was electronically filed with the Clerk of Court using CM/ECF, which will

send notification that such filing is available for viewing and downloading from CM/ECF to the

following:

Chad Michael Shandler, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

John C. Phillips, Jr. (#110)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALEXANDER FABRICS, LLLP,     :
     :
       Plaintiff,     :
     :
     v.     :     C.A. No. 1:07-cv-00174 GMS
     :
ROKA APPAREL PRODUCTS, LLC     :
     :
       Defendant.     :
     :

## ORDER

AND NOW, this _____ day of_____, 2007, upon consideration of

plaintiff Alexander Fabrics, LLLP's Motion to Enjoin RoKa Apparel Products, LLC from

Proceeding in the Florida Action (the "Motion") and defendant RoKa Apparel Products, LLC's

response thereto;

IT IS HEREBY ORDERED that the Motion is DENIED in its entirety.

_____
The Hon. Gregory M. Sleet

# EXHIBIT A

**(TO DEFENDANT ROKA APPAREL PRODUCTS, LLC'S RESPONSE TO PLAINTIFF ALEXANDER FABRICS, LLLP'S MOTION TO ENJOIN ROKA APPAREL PRODUCTS, LLC FROM PROCEEDING IN THE FLORIDA ACTION)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALEXANDER FABRICS, LLLP,                   :
                                           :
                    Plaintiff,             :
                                           :
          v.                               :C.A. No. 1:07-cv-00174 GMS
                                           :
ROKA APPAREL PRODUCTS, LLC                 :
                                           :
                    Defendant.             :
                                           :

## DECLARATION OF LARRY L. STONE

I, Larry L. Stone, declare to the best of my knowledge, information and belief as follows:

1.  I am of legal age and competent to make this declaration. Unless otherwise stated, the contents of my declaration are made on personal knowledge.

2.  In my capacity as the Managing Member of Roka Apparel Products, LLC, the defendant in the above-captioned action ("Roka"), I am familiar with the transactions with the plaintiff Alexander Fabrics, LLLP ("Alexander Fabrics") that are the subject of this action and the action filed in the Florida state court by Roka against Alexander Fabrics, which is entitled *Roka Apparel Products LLC v. Alexander Fabrics, LLLP* Case No. 16-2007-CA000151-XXX, Fourth Judicial Circuit in and for Duval County, Florida (the "Florida Action").

3.  I file this declaration in opposition to Alexander Fabrics' Motion to Enjoin Roka Apparel Products, LLC from Proceeding in the Florida Action ("Motion to Enjoin") and in particular, to several statements made in the June 1, 2007 Declaration of Christopher Perry, who identifies himself as the President of Alexander Fabrics from January 1, 1990 through January 2006 ("Perry").

4. Roka is a manufacturer of women's undergarments and swimwear. At all times material to the transactions between Roka and Alexander Fabrics that are the subject of this case and the Florida Action, Roka maintained its administrative office at 9487 Regency Square Blvd., N., Jacksonville, Florida and maintained its manufacturing facility in Honduras. Although formed as a Delaware LLC, Roka has never maintained an office or manufacturing facility in Delaware and has not conducted any business in Delaware.

5. Perry states in ¶ 2. of his Declaration that "Alexander had no dealings or business in the State of Florida." Alexander Fabric's own documentation contradicts this statement and shows that Alexander Fabrics routinely did business with Roka at its Jacksonville, Florida location during the relevant time period. Attached to Alexander Fabrics' own Complaint in this case as Exhibit A are thirty-one invoices issued by Alexander Fabrics in Burlington, North Carolina between December 22, 2004 through March 8, 2005 (the "Alexander Fabrics Invoices"). Alexander Fabrics alleges that North Carolina is the state of its formation and where it has its principal place of business (Comp. ¶2.) Alexander Fabrics further alleges that the Alexander Fabrics Invoices evidence shipments of fabric Alexander Fabrics shipped to Roka for which Roka owes Alexander Fabrics the sum of $152,238.55 (Comp. ¶19.) One of the thirty-one Alexander Fabrics Invoices, No. 0023308, dated 2/11/2005 is attached here as Exhibit A.

6. Alexander Invoice No. 0023308, like each of the thirty-one Alexander Fabrics Invoices, *prepared by Alexander Fabrics*, contains identical language in the relevant sections. First, in the **"SOLD TO"** and **"SHIP TO"** sections, Alexander Fabrics states that the fabric for which it is seeking payment in this case was **"SOLD TO ROKA**

2

APPAREL PRODUCTS, LLC, 9487 REGENCY SQUARE BLVD. N., JACKSONVILLE, FL 322250000." and "SHIP TO ROKA APPAREL PRODUCTS c/o CROWLEY LOGISTICS, INC., 4222 JAMES E. CASEY DR. JACKSONVILLE, FL 32219." Next, in the "Send Remittance To" section, Alexander Fabrics states that payment for the fabric was to be sent by Roka to "Alexander Fabrics, P. O. Box 751597 in Charlotte, N.C.. The same information is reflected on the Packing Slips prepared by Alexander Fabrics, a sample of which is attached as Exhibit B. This Packing Slip corresponds to Invoice No. 0023308.

7. As required by Alexander Fabrics' own invoices, Roka routinely made payments to Alexander Fabrics from its Jacksonville, Florida office, from a Florida bank account maintained by Roka at a Florida bank. Attached as Exhibit C is a cancelled check from Roka to Alexander Fabrics making payment for fabrics delivered to Roka in Jacksonville, Florida. The cancelled check bears Roka's Jacksonville, Florida office address--the same Florida address found on the invoices prepared by Alexander Fabrics in the "Sold to" and "Ship to" sections.

8. Perry further makes the unsupported statement in ¶ 3. of his Declaration that "title to the fabric subject of the present dispute was transferred to Roka in the State of North Carolina upon delivery by Alexander to a delivery company in the State of North Carolina." However, the Purchase Orders issued by Roka to Alexander Fabric in North Carolina, a sample of which is attached as Exhibit D, confirm that the shipping terms for the fabric furnished by Alexander Fabrics to Roka were "Ship Via:    FOB JACKSONVILLE, FL U.S." This Purchase Order corresponds to the Alexander Invoice and packing slip attached as Exhibits A and B. As true with the terms of the Alexander

3

Fabric Invoices, the terms of Roka's purchase order confirms that Jacksonville, Florida was the place of destination. "FOB JACKSONVILLE, FL U.S." means that Alexander Fabrics, as seller of the fabric, was required to, and did tender delivery of the fabric to Roka in Jacksonville, Florida, and not in North Carolina as Perry states. (*See* 6 Del. C. § 2-319 (1)(b)) (2007).

9. The subject matter of the Florida Action is not the same as the claims asserted by Alexander Fabrics in this case in which it seeks payments in the sum of $152,238.55 as set forth in the Alexander Fabric Invoices attached to the Complaint.

10. In the Florida Action Roka seeks damages from Alexander Fabric in excess $700,000 related to the failure of a large quantity of specialized liner fabric manufactured by Alexander Fabrics to conform to specifications, sample and affirmation. This specialized fabric was ordered by Roka in 2004 for use in the cup lining of certain products ROKA was manufacturing to fulfill a large contract with a major customer. As alleged in the Florida Action, the liner fabric delivered by Alexander Fabrics was not fit for the purpose for which it was to be used, failed to conform to specifications, did not stretch or mold as required, and was not the same as that which Alexander Fabrics had promised and submitted for testing and approval.

11. I am aware of no impediment to Alexander Fabrics' asserting and litigating the claims it has asserted against Roka in this case in the Florida Action.

12. Anticipated witnesses for Roka in this case and the Florida Action reside in and are closer to Florida than to Delaware.

13. Books and records pertinent to this case and the Florida Action are located in and are closer to Florida than to Delaware.

4

14.  The costs and expenses for Roka to litigate the subject matter of this case are substantially less in Florida in the Duval County Circuit Court than in Delaware in the United States District Court.

Under penalties of perjury, I state that foregoing is true and correct to the best of my knowledge and belief.

Dated:  June   14, 2007

Larry L. Stone

5

BARBARA STUDIO      003 /011

# EXHIBIT A

# Alexander Fabrics

POST OFFICE BOX 147
BURLINGTON, NORTH CAROLINA 27216-0147
TELEPHONE: 336/229-9139
FACSIMILE.: 336/228-3332

COPY 1

## INVOICE

INVOICE NUMBER: 0023308

INVOICE DATE: 2/11/2005

PAGE: 1

| | | |
|---|---|---|
| **SOLD TO** | ROKA APPAREL PRODUCTS, LLC<br>9487 REGENCY SQUARE BLVD. N<br>JACKSONVILLE, FL 322250000 | **SHIP TO** |

ROKA APPAREL PRODUCTS
C/O CROWLEY LOGISTICS, INC.
4222 JAMES E. CASEY DR.

JACKSONVILLE, FL 32219

| | |
|---|---|
| **BOL** 0029284 | **PO NUMBER** R357927 |
| **TERMS** NET 60 | **PO DATE** 12/22/2004 |
| **SHIP VIA** WATKINS TRUCK | **CONTRACT #** 0008563-000 |
| **SHIP DATE** 2/11/2005 | **SALESMAN** DAVID BLOOM |

| Product Information | Dye Lot/Order # | Pieces | U/M | Quantity | Price | Amount |
|---|---|---|---|---|---|---|
| 3126 0 8062<br>01302 ATW TRUE WHITE ATW<br>ATW TRUE WHITE<br><br>SHADE: 10 | 0020934000000 | 17 | YD<br>SY<br>LB | 1585 0<br>4050.6<br>569 8 | 3 000 | 4755 00 |
| | SUBTOTAL | | | 1585.0 | | 4755.00 |
| | TOTAL | | | 1585.0 | | 4755.00 |

Send Remittance To:
ALEXANDER FABRICS
P O. BOX 751597
CHARLOTTE, NC 28275

Continuing Guaranty Under the Flammable Fabrics Act and Textile Fiber Products Identification filed with the Federal Trade Commission

# EXHIBIT B

# Alexander Fabrics

Packing List

| DATE | ROLL NO. | P.O. NO. |
|------|----------|----------|
| 2/11/2005 | 0029284 | R357927 |

CARRIER: WATKINS TRUCK

SOLD TO
ROKA APPAREL PRODUCTS
9487 REGENCY SQUARE BLVD N
JACKSONVILLE, FL 32225

SHIP TO
ROKA APPAREL PRODUCTS
C/O CROWLEY LOGISTICS, INC.
JACKSONVILLE, FL 32219

| PRODUCT | | | CUSTOMER PRODUCT |
|---------|---|---|---|
| 3126 0 | 8062 | | 01302 ATW TRUE WHITE |

| COLOR | CUSTOMER COLOR # |
|-------|------------------|
| ATW TRUE WHITE | ATW |

| BULK NUMBER | ROLL NO. | LOT# | LINEAR YARDS | GROSS WEIGHT | NET WEIGHT |
|-------------|----------|------|--------------|--------------|------------|
| | 000472421 | 0020934000000 | 89.0 | 31.0 | 29.6 |
| | 000472422 | 0020934000000 | 100.0 | 36.4 | 35.0 |
| | 000472423 | 0020934000000 | 100.0 | 36.6 | 35.2 |
| | 000472425 | 0020934000000 | 78.0 | 30.0 | 28.6 |
| | 000472426 | 0020934000000 | 100.0 | 37.5 | 36.1 |
| | 000472427 | 0020934000000 | 101.0 | 38.2 | 36.8 |
| | 000472428 | 0020934000000 | 101.0 | 37.6 | 36.2 |
| | 000472429 | 0020934000000 | 98.0 | 36.0 | 34.6 |
| | 000472430 | 0020934000000 | 29.0 | 13.2 | 11.8 |
| | 000472431 | 0020934000000 | 100.0 | 37.2 | 35.8 |
| | 000472432 | 0020934000000 | 100.0 | 37.4 | 36.0 |
| | 000472433 | 0020934000000 | 94.0 | 35.4 | 34.0 |
| | 000472434 | 0020934000000 | 101.0 | 38.0 | 36.6 |
| | 000472435 | 0020934000000 | 100.0 | 37.6 | 36.2 |
| | 000472436 | 0020934000000 | 100.0 | 37.5 | 36.1 |
| | 000472437 | 0020934000000 | 100.0 | 37.0 | 35.6 |
| | 000472438 | 0020934000000 | 100.0 | 37.0 | 35.6 |

| | | | | | |
|---|---|---|---|---|---|
| PRODUCT TOTALS: PKGS. 17 | | 4050.6 SO YDS. | 1585.0 LN YDS. | 593.6 GR. WGT. | 569.8 NT. WGT. |
| FINAL TOTALS: PKGS. 17 | | 4050.6 SO YDS. | 1585.0 LN YDS. | 593.6 GR. WGT. | 569.8 NT. WGT. |

# EXHIBIT C

06/15/2007 11:26 9012858890 19047258328
05/30/2007 01:22
BARBARA SLOTT PROD
RUNA

**ROKA APPAREL PRODUCTS, LLC.**
9487 REGENCY SQUARE BLVD. N., STE. 145
JACKSONVILLE, FL 32225

2339
10/7/2004

BRANCH BANKING AND TRUST COMPANY
JACKSONVILLE, FLORIDA

PAY TO THE ORDER OF  Alexander Fabrics

Forty-four Thousand Nine Hundred Forty-Three and 18/100 ****************  **$44,943.18

DOLLARS

Alexander Fabrics
P.O. Box 751597
Charlotte, NC 28275

MEMO

Karen Stone

⑈002339⑈ ⑆263191387⑆ 0145171563⑈

---

**RoKa Apparel Products LLC**
9487 Regency Square Blvd. N Suite 145
Jacksonville, FL 32225-8125
904-725-0824

2782
1/19/2005

BRANCH BANKING AND TRUST COMPANY
TALLAHASSEE, FL 32312

PAY TO THE ORDER OF  Alexander Fabrics

Thirty-One Thousand Two Hundred Twenty-One and 26/100 ****************  $**31,221.26

DOLLARS

Alexander Fabrics
P.O. Box 751597
Charlotte, NC 28275

MEMO

Karen Stone

⑈002782⑈ ⑆263191387⑆ 0145171563⑈





# EXHIBIT D

# PURCHASE ORDER

| | |
|---|---|
| Date | 12/21/2004 |
| Order Number | R357927 |
| Vendor | 0032 |
| Buyer | RAMA |

PLEASE SEE REVERSE FOR REGULATION INF

ROKA APPAREL PRODUCTS LLC
VILLANUEVA, CORTES HONDURAS
CONTACT: SHICOW-FEN LEE
EMAIL: SFLEE@WARNACO.COM
PHONE#: 504-670-4051

Attn: ALISON LOPEZ

ALEXANDER
1718 MAPLE AVENUE
336-229-9139
BURLINGTON, NC 27215

**TERMS:** 60 DAYS (FROM INVOICE DATE)

**D.D.P.:**

**Ship Via:**

**Ship To:**
RC -

FOB JACKSONVILLE, FL U.S.

**Bill To:**
HAMLET MANUFACTURING #2
CUTTING DEPT (ROKA)
ZOLI PARQUE INDUSTRIAL
VILLANUEVA BUILDING #17
VILLANUEVA-C HONDURAS

ROKA APPAREL PRODUCTS LLC
SUITE 145
9487 REGENCY SQUARE BLV N
TEL: 904 725 0024
JACKSONVILLE, FL 32225

**P.O. Comments**

| L I N # | Price | Fabric | Color | Mill Number | Mill Description Mill Color | Order Qty | Unit Meas. | Due Date | At ROKA | Ship To |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3.00000 | 01302 MICRODENIER NYLON TRUE WHITE | | | - | 5,180.000 YARDS | 01/15/2005 | 3 | wk | RC |

SPECIAL INSTRUCTIONS

Send invoices to:
ROKA APPAREL PRODUCTS LLC
SUITE 145
9487 REGENCY SQUARE BLV N
TEL: 904 725 0024
JACKSONVILLE, FL 32225

*All invoices, packing lists, cartons and labels must show ROKA's number and purchase order number
*Packing lists must be included with all shipments.
*Packing lists must be included with all shipments.
*If goods do not meet ROKA specification and inspection,
Reserve the right to return such goods for full credit.
*Continuing guaranty under the flammable fabrics and textile
fibre products I.D.'s must be made on all invoices.

If you cannot fulfill any of the above
NOTIFY US IMMEDIATELY

COPY 1 - Vendor Copy

_Ricardo Irimaya_
Authorized Signature

# EXHIBIT B

**(TO DEFENDANT ROKA APPAREL PRODUCTS, LLC'S RESPONSE TO PLAINTIFF ALEXANDER FABRICS, LLLP'S MOTION TO ENJOIN ROKA APPAREL PRODUCTS, LLC FROM PROCEEDING IN THE FLORIDA ACTION)**



Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Omnicom Group, Inc. v. Employers Reinsurance Corp.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
OMNICOM GROUP, INC., and Harrison & Star, Inc., Plaintiffs,
v.
EMPLOYERS REINSURANCE CORPORATION, Defendant.
**No. Civ.A. 01-839-GMS.**

Jan. 28, 2002.

*MEMORANDUM AND ORDER*
SLEET, J.

### I. INTRODUCTION

*1 On November 8, 2001, Employers Reinsurance Corporation ("ERC") filed a declaratory judgment action against Omnicom Group, Inc. ("Omnicom"), Harrison & Star ("H & S"), and Merck & Co., Inc. ( "Merck"), in the New York State Supreme Court, New York County. On November 15, 2001, Omnicom and H & S filed a declaratory judgment action against ERC in the Delaware Superior Court. ERC removed the Delaware Superior Court action to the United States District Court for the District of Delaware on December 17, 2001.

Presently before the court is ERC's motion to dismiss, or alternatively, to transfer this case to the Southern District of New York, or to stay this case pending the outcome of the state court litigation in New York County. ERC argues that the court should dismiss or stay this action because a concurrent similar action exists in a New York state court. It further argues that, should the court not dismiss or stay this action, the case should be transferred to New York pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court will grant ERC's motion to transfer.[FN1]

FN1. The court cannot transfer this case to the New York state court. Rather, it must transfer it to the Southern District of New York. The court recognizes that such an action will not alleviate the burden of having two identical cases being tried by two courts. However, the court remains convinced that it is less costly, and more convenient, to try the cases in one district, rather than across state lines. Moreover, while the court expresses no opinion on the propriety of such an action, remand of the case from the Southern District of New York to the New York State Supreme Court, New York County, will now be an option.

### II. BACKGROUND

Omnicom is incorporated under the laws of the State of New York, with its principle place of business in New York. It is a holding corporation for a number of other corporations, including its wholly-owned subsidiary, H & S. H & S provides marketing and advertising consultation and services. It is also incorporated under the laws of the State of New York, with its principle place of business in New York. The defendant insurer, ERC, is incorporated in the State of Missouri, and is licenced to do business in New York.

In May 1996, ERC issued an insurance policy (the " policy") in favor of Omnicom as the named insured. ERC also provided coverage to H & S under Omnicom's policy.

In January 1998, Omnicom notified ERC that "Jane Doe" had filed a lawsuit against Merck and H & S in the New York State Supreme Court, Suffolk County (the "Suffolk County action"). The complaint alleged various causes of action for libel,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

fraud, civil rights violations and intentional infliction of emotional distress. On September 21, 2001, the jury returned a verdict awarding Jane Doe compensatory and punitive damages.

On November 8, 2001, ERC filed a declaratory judgment action in the New York State Supreme Court, New York County, against Omnicom, Merck, H & S and Jane Doe.[FN2] In the complaint, ERC sought a declaratory judgment that it is not obligated to pay any portion of the punitive damages award against the named defendants in the Suffolk County action.

> FN2. Jane Doe is a nominal defendant against whom no relief is sought.

Subsequently, on November 15, 2001, Omnicom and H & S filed the present action in the Delaware Superior Court. ERC removed the case to the United States District Court for the District of Delaware on December 17, 2001. In this action, Omnicom and H & S seek a declaratory judgment that ERC is obligated to pay the punitive damages arising from the Suffolk County action.

For the following reasons, the court concludes that the "balance of convenience" tips in favor of granting ERC's motion to transfer. Because it finds that transferring the case is the appropriate outcome, the court need not address the alternative motions to stay or dismiss the Delaware action.

### III. DISCUSSION

*2 ERC seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a). 1.The " First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to

the court in which the earlier-filed action is pending. *See Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991).

As this rule only applies to related cases filed in different federal courts, it is not applicable to the present situation where one action is pending in state court. Therefore, the court declines to further address the "first-filed" rule as a basis to transfer this action to New York.[FN3]

> FN3. Because the court finds other compelling reasons to transfer this case to New York, it expresses no opinion on whether the first-filed rule should apply to concurrent state and federal cases.

### 2. Section 1404(a)

Transfer to New York is, however, mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). While Omnicom and H & S do not expressly agree that this action could have been filed in the Southern District of New York as a diversity action, there can be little dispute that this is so. The plaintiffs are incorporated in New York, with their principle places of business in the Southern District of New York. The defendant is a Missouri corporation. Further, the amount in controversy is approximately $250,000. Accordingly, the Southern District of New York is an appropriate venue.

Having satisfied the initial section 1404(a) requirement, the court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara,* the Third Circuit provided a list of factors to assist the district court in determining " whether, on balance, the litigation would conveniently proceed and the interests of justice [would] be better served by a transfer to a different

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 3

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

### a. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum.[FN4] *See id.*

> FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

### 1. The Convenience of the Parties

Geographically, New York is not inconvenient for Omnicom and H & S, both of which are incorporated and headquartered in New York. Furthermore, transfer to New York would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case pending in the New York Supreme Court. Bringing witnesses and relevant documents to only one location, here New York, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and

efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

### 2. The Convenience of Witnesses

*3 Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. " *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Omnicom and H & S argue that ERC has failed to demonstrate that Delaware would be an inconvenient forum for potential non-party witnesses. The court agrees, and notes that ERC's bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. The court notes that all the material witnesses in this dispute, party or otherwise, will be in New York already to litigate the related state court case now pending in New York County. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

### 3. The Location of Records and Other Documents

The technological advances of recent years have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Neither party argues that the records and documents are voluminous in this case. Thus, neither party can claim one forum is better than another forum in this regard. However, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in New York for the litigation of the state court case. The court sees no need to require that Omnicom, H & S and ERC move the same documents from state to state. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

### b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

### 1. Administrative Difficulty

Omnicom and H & S argue that the Southern District of New York has many more case filings than the District of Delaware. Moreover, in 2000, Delaware had seventy civil cases that were over three years old, whereas the Southern District had over one-thousand. Thus, they argue that the Delaware court would be more able to expeditiously address this action.

*4 The court is mindful of the court congestion that concerns Omnicom and H & S. It thus finds that Delaware's lighter caseload weighs in favor of denying the transfer to New York. However, this is but one factor in the analysis and is not alone determinative of the issue.

### 2. Public Policies of the Fora

The next relevant factor concerns New York and Delaware's public policies. Delaware public policy favors the insurability of punitive damages. *See Whalen v. On-Deck,* 514 A.2d 1072, 1074 (Del.1986). New York's policy favors the uninsurability of punitive damages. *See Home Ins. Co. v. American Home Products Corp.,* 75 N.Y.2d 196, 200 (N.Y.1990).

In this action, a New York insured seeks to enforce its insurance policy against an insurer with its principle place of business in New York, for cove rage based on a cause of action arising within New York's borders. New York could thus make a compelling argument that its policy should be applied. Likewise, Omnicom and H & S are within their rights to argue that Delaware's policy should be applied because the insurance policy was allegedly issued in Delaware. However, where the policy was actually issued is a disputed fact and not for the court to decide on this motion. Accordingly, the court finds that, given the equally important policies of the states, and the conflicting evidence regarding the policy in question, this factor must remain neutral.

### 3. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

The parties do not dispute that the issue presented in both of the cases is identical. Specifically, the issue is whether ERC is obligated to insure Omnicom and H & S against punitive damages awards. To have courts in two different states each deciding this issue would not be in the interest of sound judicial administration. Nor would such a result be the most expeditious and inexpensive method of determining the parties' rights and liabilities. The parties are already located in New York, both to litigate the pending case in the New York Supreme Court, and to conduct their daily business.

Accordingly, the court finds that this factor weighs heavily in favor of transferring this case to New York.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

4. Local Interest in Deciding This Action

Finally, the court finds that Omnicom and H & S have failed to articulate any clear interest that Delaware has in this case. Rather, they briefly allude to the possibility that the insurance contract may have been issued in Delaware. The court finds that this disputed factual issue alone is not enough to conclude that Delaware has a significant interest in this action.

In contrast, New York has a great interest in the outcome of this action. The parties are either New York corporations, or are licensed to do business in New York. Further, the insurance coverage dispute emanates from Jane Doe's original Suffolk County action. As such, the causes of action in the two cases currently at issue arise from alleged wrongful acts in the State of New York.

*5 Thus, this factor also weighs heavily in favor of transferring this case to New York.

IV. CONCLUSION

The court is mindful that there are several factors weighing against transferring this case to New York. However, there are an equal number of factors weighing in favor of transfer that the court finds are deserving of more significant weight. Particularly persuasive are the following facts. Delaware has no clear connection to this case. However, all the parties have significant connections to New York, the underlying action arose in New York, and the identical case is currently pending in a New York court. Thus, the court concludes that the "balance of convenience" tips in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:
1. Employers Reinsurance Corporation's alternative motion to transfer this action to the Southern District of New York (D.I.2) is GRANTED.
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

3. Omnicom Group, Inc. and Harrison and Star, Inc.'s Motion For Leave to File a Sur-Reply Brief (D.I.13) is declared MOOT.

D.Del.,2002.
Omnicom Group, Inc. v. Employers Reinsurance Corp.
Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

**(TO DEFENDANT ROKA APPAREL PRODUCTS, LLC'S RESPONSE TO
PLAINTIFF ALEXANDER FABRICS, LLLP'S MOTION TO ENJOIN ROKA APPAREL
PRODUCTS, LLC FROM PROCEEDING IN THE FLORIDA ACTION)**



Slip Copy                                                                                    Page 1

Slip Copy, 2007 WL 184776 (W.D.Pa.)
**(Cite as: Slip Copy)**

North American Communications, Inc. v.
Homeowners Loan Corp.
W.D.Pa.,2007.
Only the Westlaw citation is currently available.
    United States District Court,W.D. Pennsylvania.
    NORTH AMERICAN COMMUNICATIONS,
        INC., Plaintiff,
            v.
    HOMEOWNERS LOAN CORPORATION,
            Defendant.
        **No. CIVA 3;2006-147.**

        Jan. 22, 2007.

Heather Z. Kelly, Robert J. Tribeck, Rhoads &
Sinon LLP, Harrisburg, PA, for Plaintiff.
Raymond P. Pepe, Kirkpatrick & Lockhart
Nicholson Graham LLP, Harrisburg, PA, for
Defendant.

    *Memorandum Opinion and Order of Court*
GIBSON, J.
**\*1** This case comes before the Court on the
Defendant, Homeowners Loan Corporation's
(hereinafter "HLC") Motion to Dismiss (Document
No. 7) and Brief in Support (Document No. 6).
HLC seeks the dismissal of Plaintiff, North
American Communications, Inc.'s (hereinafter "
NAC") Complaint that seeks damages for breach of
contract and declaratory relief under Pennsylvania
law. A second motion filed by HLC entitled Motion
to Stay Discovery Pending Ruling on Motion to
Dismiss or Transfer (Document No. 22) is also
before the Court. This matter was removed to this
Court on July 3, 2006 from the Court of Common
Pleas of Blair County, Pennsylvania. *See* Notice of
Removal (Document No. 1). Subject matter
jurisdiction is based upon diversity of citizenship
and the amount in controversy exceeds $75,000
pursuant to 28 U.S.C. § 1332. Venue is proper
pursuant to 28 U.S.C. § 1391(a)(2).

The present matter arises from a contractual
relationship between the parties that has since been
terminated. HLC contracted with NAC for NAC to
provide mailing services for HLC's mortgage
lending business and that contract existed for the
period of November 2004 through January 2006.
Notice of Removal, Exhibit 3 (Complaint), ¶¶ 7,
9. NAC did not provide any trucking services itself,
but subcontracted with a trucking company that,
pursuant to HLC's contract, would pick up its mail;
the contract language offered a 10 *per centum*
discount should more than ten *per centum* of HLC's
mail in any month be delivered late. Notice of
Removal, Exhibit 3 (Complaint), ¶¶ 10-15.
During the course of the contractual relationship,
NAC forwarded invoices from the trucking
company to HLC for its services performed under
the contract "[f]rom December 2004 through July
2005" in the amount of $153,034.77, but HLC
refused to remit such a balance claiming such
amount to be equal to "trucking credits" to which
HLC was entitled pursuant to the contract discount.
Notice of Removal, Exhibit 3 (Complaint), ¶¶
16-24. NAC disputes the fact that HLC can "
unilaterally withhold[ ] [the] trucking credits", and
that if the withholding of the amounts is
permissible, the credits claimed exceed the possible
amount that may be withheld. *Id.* "On January 19,
2006, NAC learned that HLC was ceasing its
operations with NAC." Notice of Removal, Exhibit
3 (Complaint), ¶ 25. NAC subsequently invoiced
HLC for the amount of $34,246,21, representing
outstanding mailing services, but HLC contended
that such an invoice was incorrect because unused
postage previously paid to NAC in the amount of
$175,071.76 had not yet been refunded to HLC.
Notice of Removal, Exhibit 3 (Complaint), ¶¶
26-33. HLC indicated that the trucking credits of
$153,034.77 also should apply. Notice of Removal,
Exhibit 3 (Complaint), ¶ 31. NAC takes the
position that the trucking credits were taken "
unilaterally" under the contract, and thus were
improper, and indicated to HLC that it would not
refund the outstanding postage until the outstanding

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                     Page 2

**Slip Copy, 2007 WL 184776 (W.D.Pa.)**
**(Cite as: Slip Copy)**

trucking invoices were first paid by HLC. Notice of Removal, Exhibit 3 (Complaint), ¶¶ 28-33.

*2 The present action was initiated in the Court of Common Pleas of Blair County through the filing of a praecipe for a writ of summons on May 25, 2006 and that court subsequently issued the writ of summons on May 31, 2006; a complaint was later filed on June 15, 2006. Notice of Removal, Exhibits 1, 2, 3.

HLC filed its own complaint on May 31, 2006 in the United States District Court for the Northern District of Georgia. HLC claims not to have known of the Pennsylvania action as of the day it filed its complaint. HLC's Brief (Document No. 6), p. 3. Thereafter, "[o]n June 27, 2006, NAC filed a Motion to Dismiss or, in the Alternative, to Stay the Georgia Action in favor of the Pennsylvania Action" HLC's Brief, p. 4. HLC filed the present Motion to Dismiss or Transfer on July 11, 2006. NAC's motion to dismiss remains pending before the district court for the Northern District of Georgia. HLC's Motion to Stay, ¶ 1. This Court must determine whether to retain jurisdiction over the case *sub judice,* dismiss it or transfer it to the district court in the Northern District of Georgia. The Court will deny HLC's Motion to Dismiss, but grant its alternative Motion to Transfer, and in light of this ruling, the Court will also deny HLC's Motion to Stay as moot.

Generally speaking, NAC claims it was the first to file a civil action on these matters and its choice of forum should be respected, while HLC styles NAC's actions in filing its praecipe for a writ of summons as "anticipatory." HLC's Brief, p. 11. Since 1941, the Court of Appeals for the Third Circuit has recognized the "first-filed rule" which has been summarized by the Third Circuit as follows: "We concluded that '[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.' " *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988) (citations omitted). The rule itself promotes efficiency in the judicial system and is flexible:
The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court "the power" to

enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court. *See Triangle Conduit & Cable Co. v. National Elec. Products Corp.,* 125 F.2d 1008, 1009 (3d Cir.), *cert. denied,* 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942). That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.

*E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971-972 (3d Cir.1988) (citations omitted). Jurisdiction pursuant to the first-filed rule has been refused where the federal court found that an anticipatory filing was made to avoid "another, less favorable, forum" and also where a later-filed civil action had progressed to a greater extent than the first-filed action. *E.E.O.C.* at 976. In resolving a conflict, under the authority of the first-filed rule, between proceedings involving the same parties and same issues filed in different federal courts possessing "concurrent jurisdiction" judges are granted discretion, but are guided by the principles of equity "to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C.* at 977.

*3 The parties attempt to characterize this present matter as either equitable or legal in character in order to support their respective arguments for the application or inapplication of the "first-filed" rule as they both read the rule as not applying to legal actions. Specifically, NAC makes much of the assertion that the "first-filed" rule is inapplicable to claims for declaratory relief rather than legal claims and that its claim is one for a legal claim, *i.e.* breach of contract. HLC characterizes the present civil action as equitable in character. The Court does not agree with NAC's interpretation of *Drugstore-Direct v. The Cartier Div. Of Richemont North America, Inc.,* 350 F.Supp.2d 620 (E.D.Pa.2004) as precedent for the concept that only claims at law, not claims in equity or declaratory relief actions, that are filed first require the application of the first-filed rule. The Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 3

**Slip Copy, 2007 WL 184776 (W.D.Pa.)**
**(Cite as: Slip Copy)**

finds that the first-filed rule applies to all types of actions. *See E.E.O.C.* at 971 (citing *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) ). Additionally, NAC's reliance on *Drugstore-Direct, Inc.,* which cites the Supreme Court case of *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), is misplaced in that it does not stand for the proposition that *all* declaratory actions are within the discretion of this Court to hear, because *Wilton* is based upon the federal Declaratory Judgment Act, not the Pennsylvania act presently before the Court or any other state law regarding declaratory judgments. However, the Court does note that under Pennsylvania's Declaratory Judgments Act Pennsylvania courts certainly do have the discretion to exercise jurisdiction over a declaratory claim. *See Pennsylvania State Lodge, F.O.P. v. Commonwealth of Pennsylvania, Dept. Of Labor and Industry,* 692 A.2d 609, 613 (Pa.Commw.1997) , *aff'd, Pennsylvania State Lodge, F.O.P. v. Commonwealth of Pennsylvania, Dept. Of Labor and Industry,* 550 Pa. 549, 707 A.2d 1129 (Pa.1998) .

Despite the legal posturing of the parties concerning the legal or equitable character of the present civil action, both parties are incorrect; the present action is one for both breach of contract and a declaratory judgment under Pennsylvania law. Therefore, the arguments made by the parties that attempt to classify this action as either legal or equitable are unpersuasive to this Court. *Accord, Koresko v. Nationwide Life Ins. Co.,* 403 F.Supp.2d 394, 401 (E.D.Pa.2005). As stated above, the first-filed rule applies to all civil actions, whether they contain requests for declaratory relief or not.

With this understanding, the Court concludes that the first *federal* court to possess jurisdiction was the Northern District of Georgia, not this Court. It is this Court's understanding that the "first-filed" rule is intended to promote "comity" within the federal courts and discourage conflicting orders among federal courts. *EEOC* at 971, 977. The Court further finds that there was no bad faith, forum shopping or other inequities that occurred with the filing of the Georgia action or the progress of the case *sub judice* that would mandate this Court to retain jurisdiction

over this case. Therefore, in applying the first-filed rule to the existing conflict between the case *sub judice* and the Georgia action the Court determines that the United States District Court for the Northern District of Georgia was the first federal district court to possess jurisdiction over this subject matter and therefore jurisdiction is properly in that federal court.[FN1]

> FN1. In applying the first-filed rule, the first-filed case is the federal civil action which is first in time, whether by removal or the actual filing of a civil action in federal court. Since the rule the Court follows today is limited to federal district courts, the plaintiff in a state civil action can avoid being the second-filed matter by simply filing a complaint in a federal district court, not a state trial court at the outset. This is particularly notable in that instance where it appears that an abuse of the timing of the filings may occur with a defendant that waits to remove an existing state action in order to file a separate federal action, in a different district court, prior to removing the plaintiff's state civil action. Although this may appear to be an abuse of the rule because one party is controlling timing of two civil actions entry into federal court, it is not an abuse because the plaintiff chose state court jurisdiction over the equally permissible jurisdiction of a federal court and therefore cannot invoke the first-filed rule.
>
> Finally, it would appear to this Court that a defendant in the state action would frequently be disinclined to remove that matter prior to filing its own federal civil action in another districtcourt. Thus, for all practical purposes, the onus is upon the competing parties to file their respective civil actions first in a federal district court in order to invoke the filed-first rule and failure to do so will result in deference to the jurisdiction of the district court obtaining jurisdiction first, absent the application of an exception to the rule. If a federal court found that one of the parties

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4

**Slip Copy, 2007 WL 184776 (W.D.Pa.)**
**(Cite as: Slip Copy)**

engaged in inequitable conduct, bad faith or forum shopping that court could exercise its discretion to determine jurisdiction without application of the first-filed rule. *See E.E.O.C. v. University of Pennsylvania, supra.*

*\*4* Having determined that the "first-filed" rule applies and that the Georgia federal action is the first filed action, the Court has three possible courses of action with respect to the case *sub judice:* dismissal without prejudice, staying the present action until completion of the Georgia federal action, or transfer to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). *Koresko,* 403 F.Supp.2d at 403. The Court believes that transfer pursuant to § 1404(a) is the appropriate remedy. This is so because the Court cannot conclude that the other two remedies would promote efficiency in the judiciary as a dismissal without prejudice could result in a re-filing of this matter in the future and a staying of the present action would delay further resolution of this matter.

The Court must evaluate both public and private factors in evaluating a motion to transfer pursuant to § 1404(a):
The private interests that may be considered include: (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses, to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879 (internal citations omitted). The public interests include: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80 (internal

citations omitted).

*Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.,* 2004 WL 2755585, \*8, 2004 U.S.Dist. LEXIS 24180 at \*29, n. 10 (E.D.Pa. Dec.1, 2004).

The Court recognizes that HLC's choice of forum is the United States District Court for the Northern District of Georgia while the NAC's choice is this district, that the witnesses, records and other evidence concerning the subject matter of this civil action appear to be spread relatively equally between Georgia and Pennsylvania. The public interests at issue do not appear to favor either forum as either district court would appear to be able to enforce its judgment upon the parties, be competent to apply either of the state laws that could be applicable and no public policies appear to be present that would preclude either court from moving forward with its respective jurisdiction over these matters. Although this Court cannot speak concerning the Northern District of Georgia's docket, it could be at least several months before the case *sub judice* could proceed to trial before this Court. In light of the application of the "first-filed" rule with the Georgia federal action being first-filed, and with the private interests and public interests to be taken into consideration under § 1404(a) not indicating that a transfer to Georgia would be inappropriate, this Court, in order to promote efficiency and prevent conflicting rulings among courts exercises its discretion and chooses to transfer the case *sub judice* to the United States District Court for the Northern District of Georgia rather than granting dismissal or entering a stay.

*\*5* AND NOW, this 22nd day of January, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant, Homeowners Loan Corporation's Motion to Dismiss or Transfer (Document No. 6) is DENIED IN PART as to the Motion to Dismiss and GRANTED IN PART as to the Motion to Transfer. IT IS FURTHER ORDERED THAT the case *sub judice* be transferred to the United States District Court for the Northern District of Georgia. IT IS FURTHER ORDERED THAT the Defendant, Homeowners Loan Corporation's Motion to Stay Discovery Pending Ruling on Motion to Dismiss or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 5

Slip Copy, 2007 WL 184776 (W.D.Pa.)
**(Cite as: Slip Copy)**


Transfer (Document No. 22) is DENIED AS
MOOT.

W.D.Pa.,2007.
North American Communications, Inc. v.
Homeowners Loan Corp.
Slip Copy, 2007 WL 184776 (W.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.